NO. 12-02-00058-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS



CORBIE DALE GRIMES,
§
 APPEAL FROM THE 241ST

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS






MEMORANDUM OPINION


 Corbie Dale Grimes ("Appellant") appeals his conviction for aggravated sexual assault, for
which he was sentenced to imprisonment for life and fined ten thousand dollars. Appellant raises
six issues on appeal. We affirm. 

Background

 J.E. testified that he met Appellant when he was eleven years old while participating in a play
at the church he attended with his family. Subsequently, Appellant became acquainted with J.E.'s
family and occasionally spent time with J.E. and his two brothers.

 During October 1999, J.E.'s grandmother was suffering from terminal cancer. (1) One night,
while J.E.'s parents tended to his grandmother's needs, Appellant came over to the house to look
after J.E. and his older brother. (2) Later that evening, the boys contacted their parents and asked if
Appellant could spend the night and if they could all sleep outside on the trampoline. J.E.'s parents
told the boys that it was alright for Appellant to stay. 

 Appellant and the two boys gathered sleeping bags and bed linens and took them out to the
trampoline. During this time, J.E.'s parents returned home. As the night wore on, Appellant and
J.E.'s older brother settled down and prepared to go to sleep. Yet, J.E. continued to jump on the
trampoline. Appellant began rubbing J.E.'s back in order to settle him down.

 J.E. testified that Appellant rubbed his back for a while, but eventually moved his hand down
onto J.E.'s buttocks. J.E. testified that Appellant next rolled him over, pulled down J.E.'s shorts,
and masturbated him until he ejaculated. J.E. testified that Appellant "had [J.E.'s] sperm on his
fingers, and ... licked his fingers." J.E. further testified that Appellant then put his mouth on J.E.'s
penis and stimulated J.E. until J.E. ejaculated again. J.E. testified that he ran into the house
following this incident. J.E. testified that a few nights later, Appellant told him that he was sorry and
not to take it the wrong way.

 Approximately one and one-half years later, J.E.'s mother caught him looking at pornography
on the internet and masturbating. While talking to her son about what he was doing, J.E. confided
in his mother concerning the incident with Appellant on the trampoline.

 Appellant was charged by indictment with aggravated sexual assault and pleaded "not
guilty." Prior to trial, Appellant filed a motion to change venue contending that publicity he received
in the newspaper prejudiced his right to a fair trial. Appellant argued the motion during a pretrial
hearing, but no evidence was presented. After argument, the trial court carried Appellant's motion
until the date of trial. After voir dire was complete, and before the trial began, the trial court had not
yet ruled on Appellant's venue motion. Appellant proceeded to trial and did not reurge his motion
to change venue or otherwise request that the trial court rule on his motion.

 Ultimately, the jury found Appellant guilty and recommended that Appellant be sentenced
to imprisonment for life and fined ten thousand dollars. The trial court sentenced Appellant
accordingly. Appellant filed a pro se motion for new trial arguing that his trial counsel was
ineffective. The trial court conducted a hearing on Appellant's motion, during which Appellant
examined his trial counsel and other witnesses. The trial court subsequently overruled Appellant's
motion for new trial and this appeal followed.


Ineffective Assistance of Counsel

 In issue one, Appellant argues that his trial counsel was ineffective because he failed to
obtain expert witness testimony to rebut the testimony of the State's expert witnesses, who testified
both during the trial on the merits and the punishment phase. Appellant further contends that the
exhibits offered at the hearing on his motion for new trial demonstrate that the result of the
proceeding would have been different but for the alleged errors made by Appellant's trial counsel.

 Claims of ineffective assistance of counsel are evaluated under the two-step analysis
articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The
first step requires the appellant to demonstrate that trial counsel's representation fell below an
objective standard of reasonableness under prevailing professional norms. See Strickland, 466 U.S.
at 688, 104 S. Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of
counsel alleged to be ineffective assistance and affirmatively prove that they fell below the
professional norm of reasonableness. See McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim.
App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of trial
counsel's representation, but will judge the claim based on the totality of the representation. See
Strickland, 466 U.S. at 695, 104 S. Ct. at 2069.

 To satisfy the Strickland standard, the appellant is also required to show prejudice from the
deficient performance of his attorney. See Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim.
App. 1999). To establish prejudice, an appellant must prove that but for counsel's deficient
performance, the result of the proceeding would have been different. See Strickland, 466 U.S. at
694, 104 S. Ct. at 2068.

 In any case considering the issue of ineffective assistance of counsel, we begin with the
strong presumption that counsel was effective. See Jackson v. State, 877 S.W.2d 768, 771 (Tex.
Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional
and were motivated by sound trial strategy. See id. Appellant has the burden of rebutting this
presumption by presenting evidence illustrating why his trial counsel did what he did. See id. 
Appellant cannot meet this burden if the record does not affirmatively support the claim. See
Jackson v. State, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998) (inadequate record on direct appeal
to evaluate whether trial counsel provided ineffective assistance); Phetvongkham v. State, 841
S.W.2d 928, 932 (Tex. App.-Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to
evaluate ineffective assistance claim); see also Beck v. State, 976 S.W.2d 265, 266 (Tex.
App.-Amarillo 1998, pet. ref'd) (inadequate record for ineffective assistance claim, citing numerous
other cases with inadequate records to support ineffective assistance claim). A record that
specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an
ineffectiveness claim. See Kemp v. State, 892 S.W.2d 112, 115 (Tex. App.-Houston [1st Dist.]
1994, pet. ref'd).

 In the case at hand, the record is silent as to the reasons Appellant's trial counsel chose the
course he did with regard to the State's expert witnesses. Although the exhibits introduced by
Appellant during argument on his motion for new trial include correspondence from Appellant to
his counsel with references made by Appellant concerning rebuttal witnesses, there is no evidence
as to the reason Appellant's attorney chose not to call such witnesses. Appellant had the opportunity
to elicit such evidence when he examined his trial counsel during the hearing on his motion for new
trial, but failed to do so. We iterate that we must presume counsel's actions and decisions were
reasonably professional and were motivated by sound trial strategy. See Jackson, 877 S.W.2d at
771. Thus, as to the alleged deficiencies in his trial counsel's performance in failing to call rebuttal
experts, we hold that Appellant has not met the first prong of Strickland because the record does not
contain evidence concerning Appellant's trial counsel's reasons for choosing the course he did. 
Therefore, we cannot conclude that Appellant's trial counsel was ineffective. Appellant's issue one
is overruled.

Evidentiary Sufficiency

 In issues two and three, Appellant contends that the evidence is neither legally nor factually
sufficient to support the jury's verdict.

Legal Sufficiency

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d
1, 6 (Tex. App.-San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most
favorable to the jury's verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871
S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by
the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed.
2d 652 (1982).

 The sufficiency of the evidence is measured against the offense as defined by a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a
charge would include one that "accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant is tried. Id. 

 A person commits the offense of aggravated sexual assault if he intentionally or knowingly
causes the sexual organ of a child to contact or penetrate his (the actor's) mouth. See Tex. Pen.
Code Ann. § 22.021(a)(1)(B)(iii) (Vernon 2003). A child is a person under seventeen years of age
who is not the spouse of the actor. See Tex. Pen. Code Ann. §§ 22.021(b), 22.011(c) (Vernon
2003). Even in the absence of an outcry statement, the victim's uncorroborated testimony supports
a conviction for aggravated sexual assault if the victim was younger than fourteen years of age at the
time of the offense. See Hellums v. State, 831 S.W.2d 545, 547 (Tex. App.-Austin 1992, no pet). 
 In the case at hand, J.E. testified that, in October 1999, Appellant, while lying next to J.E.
on a trampoline, rolled J.E. over, pulled down J.E.'s shorts, and masturbated him until he ejaculated. 
J.E. further testified that Appellant "had [J.E.'s] sperm on his fingers, and ... licked his fingers." 
Moreover, J.E. testified that Appellant put his mouth on J.E.'s penis and stimulated J.E. until he
ejaculated again. The record reflects that J.E. was twelve years old when these events took place and
was not the spouse of Appellant. We hold that the evidence is legally sufficient to support the jury's
verdict.

Factual Sufficiency

 Turning to Appellant's contention that the evidence is not factually sufficient to support the
jury's verdict, we must first assume that the evidence is legally sufficient under the Jackson
standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We then consider all
of the evidence in the record related to Appellant's sufficiency challenge, not just the evidence which
supports the verdict. We review the evidence weighed by the jury which tends to prove the existence
of the elemental fact in dispute, and compare it to the evidence which tends to disprove that fact. 
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We are authorized to disagree
with the jury's determination, even if probative evidence exists which supports the verdict. Clewis,
922 S.W.2d at 133. Our evaluation should not substantially intrude upon the jury's role as the sole
judge of the weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164. Where
there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. 
See Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.- El Paso 1996, pet. ref'd). Ultimately, we
must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates
that the proof of guilt is so obviously weak as to undermine our confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set
aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so
overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and
manifestly unjust." Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002). 

 In the instant case, Appellant contends that the following evidence should undermine our
confidence in the jury's verdict: (1) J.E. made his outcry after being discovered viewing pornography
on the internet and masturbating; (2) J.E.'s allegations of sexual assault were made approximately
two years after the alleged incident; (3) The records and testimony of Dr. Charles Fries ("Dr. Fries"),
the State's expert witness, indicated that J.E. was an habitual liar and had given inconsistent versions
of the incident in question. We disagree. First, because he was only twelve years old at the time of
the incident, J.E. was exempt from the outcry requirement. See Acts 1983, 68th Leg., p. 2090, ch.
382, § 1, eff. Sept. 1, 1983; Acts 1983, 68th Leg., p. 5317, ch. 977, § 7, eff. Sept. 1, 1983; Acts 1993,
73rd Leg., ch. 200, § 1, eff. May 19, 1993; Acts 1993, 73rd Leg., ch. 900, § 12.01, eff. Sept. 1, 1993. 
Thus, that he did not outcry to his mother until some time after the event in question is irrelevant. 
See Hellums, 831 S.W.2d at 547 (holding that the appellant's request to instruct jury to consider the
victim's delay in reporting the assault even though victim was exempt from the statute's outcry
requirement was properly disallowed as it was an illogical reading of the statute which excluded the
victim from the outcry requirement). Second, Appellant's argument concerning the circumstances
under which J.E. outcried, to the extent that such circumstances could be seen as a measure of J.E.'s
credibility, must be considered in light of J.E.'s mother's testimony that J.E. was not "in trouble"
when she discovered he was viewing pornography on the internet and masturbating. Similarly, any
evidence derived from Dr. Fries that could be seen to weigh against J.E.'s credibility must be
considered in conjunction with Dr. Fries's testimony that he had not observed anything that indicated
to him that J.E. was not being truthful. 

 The brunt of Appellant's argument is that J.E.'s testimony is not credible. But we iterate that
our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight
and credibility of witness testimony, Santellan, 939 S.W.2d at 164, and that where there is
conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. See Van
Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.- El Paso 1996, pet. ref'd). Our review of the record
in the instant case, with consideration given to all of the evidence, both for and against the jury's
verdict, has not revealed to us any evidence that causes us to conclude that the proof of guilt is so
obviously weak or is otherwise so greatly outweighed by contrary proof so as to render Appellant's
conviction clearly wrong or manifestly unjust. We hold that the evidence is factually sufficient to
support the jury's verdict. Appellant's issues two and three are overruled.

Motion to Change Venue

 In issue four, Appellant argues that the trial court improperly denied his motion to change
venue. As a prerequisite to presenting a complaint for appellate review, the record must show that
the complaint was made to the trial court by a timely request, objection, or motion and that the trial
court ruled on the request, objection, or motion either expressly or implicitly; or refused to rule on
the request, objection, or motion, and the complaining party objected to the court's refusal to rule. 
See Tex. R. App. P. 33.1(a). In the case at hand, the record reflects that the trial court did not make
a ruling at the conclusion of the hearing on Appellant's motion, choosing rather to carry Appellant's
motion until the date of trial. When Appellant's trial date arrived and the trial court failed to rule
on Appellant's motion to change venue, to properly preserve error, Appellant was required to request
a ruling from the trial court or otherwise object to the trial court's refusal to rule. See id. Since
Appellant failed to request a ruling or object to the trial court's refusal to rule on his motion to
change venue, Appellant waived the issue he now seeks to raise on appeal. Appellant's issue four
is overruled. 


Cruel and Unusual Punishment

 In issue five, Appellant contends that the sentence and fine imposed on him constituted cruel
and unusual punishment under both the Texas and United States Constitutions. Initially, we note
that Appellant made no objection to the trial court raising the issue of cruel and unusual punishment
and has, therefore, waived such an issue with respect to any alleged violation of his rights under the
Texas Constitution. See Rhoades v. State, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); Tex. R.
App. P. 33.1. However, even absent waiver, we conclude that Appellant's sentence did not constitute
cruel and unusual punishment. 

 The legislature is vested with the power to define crimes and prescribe penalties. See Davis
v. State, 905 S.W.2d 655, 664 (Tex. App.-Texarkana 1995, pet. ref'd); see also Simmons v. State, 
944 S.W.2d 11, 15 (Tex. App.-Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment
which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. See
Harris v. State, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); Jordan v. State, 495 S.W.2d 949, 952
(Tex. Crim. App. 1973); Davis, 905 S.W.2d at 664. In the case at hand, Appellant was convicted
of aggravated sexual assault, a first degree felony. See Tex. Pen. Code § 22.021. The punishment
range for such an offense is between five and ninety-nine years, or life and may include a fine not
exceeding ten thousand dollars. Id.; see also Tex. Pen. Code Ann. § 12.32 (Vernon 2003). Here,
Appellant's punishment falls within the range set forth by the legislature. Id. Therefore, the
punishment is not prohibited as cruel, unusual or excessive per se.

 Nonetheless, Appellant urges the court to perform the three-part test originally set forth in
Solem v. Helm, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the
proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the
harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and
(3) the sentences imposed for commission of the same crime in other jurisdictions. Solem, 463 U.S.
at 292, 103 S. Ct. at 3011. (3) The application of the Solem test has been modified by Texas courts and
the Fifth Circuit Court of Appeals, in light of the Supreme Court's decision in Harmelin, to require
a threshold determination that the sentence is grossly disproportionate to the crime before addressing
the remaining elements. See, e.g., McGruder, 954 F.2d at 316; see also Jackson v. State, 989
S.W.2d 842, 845-46 (Tex. App.-Texarkana 1999, no pet.).

 In determining whether Appellant's sentence is grossly disproportionate, we are guided by
the holding in Rummel v. Estell, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). (4) In
Rummel, the Supreme Court addressed the proportionality claim of an appellant who had received
a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction
for obtaining $120.75 by false pretenses. Id., 445 U.S. at 266, 100 S. Ct. at 1135. The life sentence
was imposed because the appellant also had two prior felony convictions - one for fraudulent use of
a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in
the amount of $28.36. Id., 445 U.S. at 266, 100 S. Ct. at 1134-35. After both recognizing the
legislative prerogative to classify offenses as felonies and considering the purpose of the habitual
offender statute, the court determined that the appellant's mandatory life sentence did not constitute
cruel and unusual punishment. Id., 445 U.S. at 285, 100 S. Ct. at 1145. 

 In the case at hand, the offense committed by Appellant - aggravated sexual assault - was far
more serious than any of the offenses committed by the appellant in Rummel, while Appellant's life
sentence is of equal severity to the life sentence upheld by the Supreme Court in Rummel. Thus,
it follows that if the sentence in Rummel was not unconstitutionally disproportionate, then neither
is the sentence assessed against Appellant in the case at hand. Therefore, since we do not find the
threshold test to be satisfied, we need not apply the remaining elements of the Solem test. 
Appellant's issue five is overruled.



Improper Prosecutorial Argument

 In issue six, Appellant argues that the trial court erred when it allowed the prosecuting attorney
to make certain unspecified arguments during Appellant's trial which were "extreme and manifestly
improper," which were "violative of Article 37.07 § 3," and which had the effect of injecting new facts
into the trial that were harmful to Appellant. Later in his brief, Appellant continues, 


 The prosecutor's remarks and arguments complained of herein did not fall within any of the four realms
of proper jury argument. Questioning numerous witnesses during both the trial on the merits and the
punishment phase (with the added benefit, from the State's perspective, of injecting inflammatory and
unduly prejudicial matters into the proceeding) about other alleged crimes, wrongs, or acts of Appellant
which were unrelated to the crime which Appellant was charged with did not constitute a summation of
the evidence presented at the trial. By way of example, the State kept emphasizing the alleged playing
of a game called "Farkle" by the Appellant. The times this game is mentioned in testimony and by the
prosecutor are too numerous for citation here. But from reading the record one comes away with the
impression that Appellant is guilty of a crime simply by playing a dice game. This tactic by the State was
in no way a summation of the evidence in the case at bar.


Appellant further argues that the State's argument was neither a reasonable deduction drawn from the
suspect evidence nor a plea for law enforcement, but rather amounted to a thinly disguised argument
for guilt by association.

 The appellant's brief must contain a clear and concise argument for the contentions made, with
appropriate citations to the record. See Tex. R. App. P. 38.1(h); see also Garcia v. State, 960 S.W.2d
151, 157 (Tex. App.-Corpus Christi 1997, no pet.). In instant case, nowhere in his argument pertaining
to issue six does Appellant cite to the record. Even in Appellant's sections entitled "statement of facts"
and "statement of the case," where Appellant makes broad references to the "argument of counsel,"
Appellant makes only general citations to one or more entire volumes of the sixteen-volume reporter's
record. As such, Appellant has presented nothing for this court to review. Appellant's sixth issue is
overruled.

Conclusion

 Having overruled Appellant's issues one, two, three, four, five, and six, we affirm the judgment
of the trial court.

 JAMES T. WORTHEN 

 Chief Justice

Opinion delivered November 19, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.


 (DO NOT PUBLISH)
1. The record reflects that J.E. was twelve years old during October 1999.
2. J.E. is the middle child. The record reflects that J.E. had a younger brother who spent the night at a
friend's house.
3. The strict application of the Solem test has been questioned since the Supreme Court rendered its opinion
in Harmelin v. Michigan, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991). See Simmons, 944 S.W.2d at
15. The Texarkana Court of Appeals discussed the applicability of Solem in Davis v. State, and observed that five
members of the Supreme Court in Harmelin rejected application of the three-factor test. Id. (citing Davis, 905 


Footnote continued.

S.W.2d at 664). However, the court in Davis nevertheless evaluated the sentence under the elements of Solem,
recognizing that seven of the justices in Harmelin still supported an Eighth Amendment prohibition against grossly
disproportionate sentences. See Davis, 905 S.W.2d at 664 (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th 

Cir.), cert. denied, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992) and Lackey v. State, 881 S.W.2d 418, 421
(Tex. App.-Dallas 1994, pet. ref'd)).
4. Incidentally, the Fifth Circuit has referred to Rummel as a "handy guide" to assist in conducting a
proportionality review. See McGruder, 954 F.2d at 317.